22-3075 22-3075 And counsel, you may proceed when you're ready. Thank you, good morning, Your Honor, and may it please the court. I'm David Zients for Appellant Monsanto Company. With your permission, I'd like to reserve three minutes of time for rebuttal. That will be granted. Thank you, Your Honor. Over the course of decades, EPA has reviewed the science, concluded that glyphosate is not likely to cause cancer, and determined that FIFRA does not require a cancer warning on glyphosate products like Roundup. That basic point should resolve this appeal. Congress enacted a uniformity provision, under which states may not require labeling that is... Well, of course, we're not, it's, that's not a uniform position. I mean, others take a different view, as we all know, so... Sure, sure, Your Honor, the, you know, the Ninth Circuit has interpreted the preemption provision one way. The Eleventh Circuit has now issued a decision that is not, you know, fully answered the question but its reasoning on a key point is different from the Ninth Circuit. Your Honor, I was, I only meant to refer to the name that Congress gave to Section 136BB, which is uniformity. You know, the idea, you know, certainly the goal here would be uniformity of interpretation eventually, you know, ultimately may need to, that may need to be resolved in the Supreme Court. But, you know, the question here is how you interpret this statute, you know, that is called uniformity provides that states may not require labeling that is in addition to or different from the labeling that is required under FIFRA. And when it says that, I'd like to focus on those last three words, it's under this subchapter, under this subchapter to perhaps be codified in that subchapter, but the registration themselves are not part of the statute, they're pursuant to a regulatory regime, and then they're through an agency action, a registration action. So when we look, why should we look to agency action as the basis for preemption, at least express preemption, when the express language of the statute says under this chapter in the subchapter and the registration is not specified in the subchapter. Sure, Your Honor, I think there is, there is an answer that ties into binding precedent from the Supreme Court, and then also, you know, if I could then sort of walk through some of the statutory provisions that I think get you there, but a place to start is the Supreme Court's decision in Regal versus Medtronic, which is very similar, the Supreme Court has said it is a similar express preemption provision, a lot of the features of the statutory framework are the same. What the Supreme Court, you know, said there was that when the agency undertakes a particular kind of safety approval for medical devices, you know, that agency process imposes requirements under the medical device amendments, so under the statute, you know, the same, under is the word that is used in the medical device amendments as well. What the Supreme Court said is because of the way the statute works where the agency is required to do a safety review to make determinations, and then the regulated party has to use the product and the label that as it has been approved by the agency, you know, those statutory provisions work together to, in the words of the Supreme Court, impose requirements under the statute, and we think it works the exact same way here. You know, we are talking about registration, and, you know, the fundamental requirement here is that it is illegal to sell a pesticide without registration. What the D.C. Circuit said in the Reckitt-Benckiser case is that a registration is a product-specific license that places conditions on how you can sell a product. So if, you know, the agency tells you this is what you need to warn, this is, and Congress directed it to determine what safety warnings are necessary, you know, after, when you go through that process, the agency is giving content to what is required under FIFRA there. Does Bates also deal with that? Does Bates give us the ability to not only look at the stat, whatever statutory provisions might apply, but also regulations? Yes, Your Honor. So Bates says that the EPA regulations give content to the requirements under FIFRA. You know, Bates was sort of dealing with the kind of macro question of how, like, what is, how does preemption work writ large under this statute. The one view that had been proposed by the defendant in Bates was that there's basically any state labeling, any failure to warn claim, any state labeling claim would be preempted. The Supreme Court rejected that. Instead, it adopted a parallel requirements view where, you know, state labeling claims are preempted unless they are truly parallel, they are genuinely equivalent. And what Bates says is you do look to what EPA has done. You know, it wasn't presented with the kind of issue that we have here, but it talked about genuine equivalence. It talked about what the EPA does. It gave this example about caution versus danger. But those examples were in the statute, as opposed to a registration label. The caution and the, I think it was, danger were actually defined terms in the regulations, whereas you're advocating for a position where we rely on the labeling, a non-statutory, non-regulatory definition. Sure, Your Honor. So I would respectfully disagree that it's not regulatory. You know, Congress has delegated- Well, it's not explicitly in the rights. Sure. It is not a notice and comment regulation. And the point I would make is that, is that Congress delegated to the EPA different ways to regulate EPA. You know, a long time ago, and I think it was 1984, you know, consider, are we going to go through notice and comment regulation for every labeling decision that said we essentially can't do that? We're going to do it in this case-by-case registration process. On the background of that, Congress then legislated and enacted this re-registration provision, Section 136A-1, and it actually referred to the outcome of that as regulatory action. So, it may not be sort of a notice and comment rule that is written in the CFR the way that we may be used to seeing, but it's a very formal process that Congress created. And so just to tease that out, you typically think of notice and comment as being a way of manufacturing or generating rulemaking and rules. It's called informal rulemaking. You don't have to do notice and comment to give a license for registration, typically. You just have a proceeding before an agency. It can be a formal proceeding, a trial-like proceeding, or an informal proceeding. It seems that Congress is kind of mixing and matching a little bit of the process for rulemaking for the process for issuing a registration, because typically registrations, you just have a hearing, not notice and comment. The fact that they're mixing and matching, should we read from that that it has less force of law, or should we read from that that it has more force of law, or is that just irrelevant from looking at kind of a force of law analysis? Your Honor, our view is that force of law tends to be most relevant in implied or impossibility preemption context. That's what the 11th Circuit said. Yeah. I think if we're thinking about force of law, the Supreme Court has said it is not just notice and comment rulemaking that is force of law. And I agree with you. Congress came up with a sort of sui generis procedure here, but it is a quite formal one. In fact, there are agency regulations that do involve notice and comment for this. The statutory re-registration in 1993 for glyphosate did go through notice and comment. I would also just go back to Regal and the procedure there. The Supreme Court didn't dwell on was there notice and comment as part of this premarket approval. And actually, I think there was not. These medical devices would go to the FDA. There was a rigorous safety and labeling review process, much like what you have under FIFRA. And the Supreme Court said under a very similar statutory preemption provision, when the agency does that, when the agency decides this is what is required under the statute, here is an approved way of making this product. A state can't then impose requirements that are in addition to that. Well, Ned, do you have an explanation as to why the EPA has permitted some manufacturers to unilaterally add cancer warnings by notification? How does that affect your argument? Your Honor. I mean, the Ninth Circuit cited such a thing and it's hard to make an opinion. Sure, sure. So if I could give you, I think there's an answer to that for our express preemption argument and for our impossibility preemption argument. Well, let's go with express. Sure. So for express preemption, Your Honor, we don't think it matters at all what the agency allows. Your courts are quite clear applying this parallel requirements framework for express preemption. The question is... But along the lines of Judge Phipps's point, it's a little mix and match. You're saying, oh, no, they've got it. There's a solid, very formal procedure and yet you can modify it. Manufacturers can modify it with EPA's approval. Or, you know, with EPA saying sure. Your Honor, so, you know, there is a... I want to distinguish between what the EPA may or may not allow versus what EPA requires. EPA goes through a process and decides. It is required by the statute to decide what safety warnings are necessary and required to protect health. If it is necessary under FFRA, EPA is required to impose it. If it doesn't do that, maybe would EPA allow it, perhaps? But under express preemption... Isn't your whole point that it's not... I mean, it's not really listed anywhere. As Judge Chung said as well, there's not a bunch of regs that say exactly what you have to do here. It's up to EPA's discretion. Isn't the broader import that if the manufacturer can add, then why is that not misbranding? Whether it's allowed or required, I think the question is, is that misbranding? Is in addition to misbranding or not at the level of the label? So if the manufacturer can do it and it's not misbranding, why is a state requirement misbranding? Sure. So in order... State is only permitted, and Bates says this, a state is only permitted to enforce a requirement under FFRA. So if what you are doing does not violate FFRA, a state cannot require you to do that. I think Bates says that a number of cases interpreting how this parallel requirements view of preemption works say that. So if a state, if EPA has not, has considered this and has decided not to impose a cancer warning, then it would be a requirement in addition to the federal requirements for a state to require it. No, sorry. I'm interrupting you. I'm sorry. But the thought crosses my mind that you're really pushing this genuine equivalent standard to mean really close to identicalness in terms of what the requirement is. There may be downstream consequences as far as remedies. Maybe the state could say, when you violate the federal standard, you can get all of these extra remedies, maybe punitive damages, maybe other things. That might not be a problem. But as far as what the requirement is itself, you're basically saying genuine equivalence is really close to identicalness, right? Well, Your Honor, I think it depends on the circumstance. You could have something like efficacy, where EPA has waived review of efficacy issues, and that's a situation like Bates. And there you would just look at, in general, what is the general federal statute? EPA hasn't given any content to it at all. And then you would make that genuine equivalence comparison. Where EPA has actually made the statutorily required determination about what safety warnings are required, then I do think you look at what Bates says is you should only be liable under state law if you would also be liable under federal law. So the standard is basically one of equivalence. Now, what liability flows from that, states can choose to make it way more generous or way more stringent or whatever they want. But the underlying standard for liability, you are basically telling us that genuine equivalence is, when at least the EPA speaks, is, forgive the pun, equivalent to identicalness. Yeah, I think that is right, Your Honor. And EPA, excuse me, Bates makes this point that the way it describes this parallel requirements rule is that states are entitled to add remedies, to provide their own remedies for violating federal labeling standards. So if there is any difference to the federal labeling standards, in addition to or different from. And so that's why your arguments express preemption, not preemption in the field, because states still have some parlay, some ability to work there, but not in the setting of the liability standard. Absolutely, Your Honor. I see I'm over time. If I could respond to that. Sorry, Your Honor. States have a lot of leeway. Congress made a decision here. If a state thinks that this product is truly unsafe, it can ban it. It can decide that a product may not be on the market at all. A state, there is a petition process in the EPA that there's no reason a state couldn't go to the EPA and start a petition for cancellation if it thinks that the requirements should be different. The one provision that we are focusing on here is where Congress said the one thing states can't do, they cannot add their own labeling requirements that are different from or in addition to the requirements under FFRA. Right. Thank you, counsel. Hearing on rebuttal. Thank you, Your Honor. May it please the court. I'm Chip Becker, I'm here for the plaintiffs. Under our constitutional system, states retain the sovereignty to enact laws for the health and safety of their citizens. Under the Supremacy Clause, of course, Congress can override that sovereignty, and when it does so clearly and plainly. Here, FFRA has a preemption provision. And the question is, what did Congress say? This is a straightforward question of statutory construction. Did Congress in enacting the preemption provision in FFRA override a state law claim, a Pennsylvania state law claim for strict liability sounding and failure to warn? And the answer to that question, emphatically, is no. There are certain things that Congress did, but it didn't do that. And this is apparent at every level of the analysis and the most straightforward level is just at the plain language of the of the statute, which asks. And it's new for me to have to use glasses. Which says that a state shall not and of course we've been talking about this, the state shall not impose or continue in effect any requirements for labeling or packaging. In addition to or different from those required under this chapter. Doesn't the title also have significance, uniformity? That's a good point. I mean, the EPA is looking to have a uniform label and Bates said, hey, imagine if 50 states did 50 different things. Well, and of course in Bates, Bates is talking about fonts and sort of the particular characteristics of the label. And I think Judge Chung, maybe that was to your point about caution and danger and what happens if a state says that if a pesticide having a certain characteristic has to be identified this way, but the federal government says it has to be identified a different way, and we can't have that chaos. Right. We can't have that chaos, but the way this analysis proceeds in terms of asking ourselves whether there is an impermissible state law requirement that is vitiated preempted by this uniformity language and recognizing that uniformity here is, is a term that's being used in a, in the context of a statute, which is all about cooperative federalism. The states have authority. Congress also is exercising authority. What is the relationship between the state sovereignty the state power and the federal and the federal power and that boils down to a question of comparison. But when we look at the uniformity clause, it, it uses the phrase requirements for labeling or packaging, and a failure to warn claim is going to be premised on a duty that's breach with respect to labeling or packaging. And so, a breach of a duty feels like or duty feels like a requirement. And so we can say that there's no different that we shouldn't read it this way. But when we look at the elements of a failure to warn claim that's premised on duty, and it feels like if Congress used the word requirement instead of duty, that's getting at the same thing. And I think I think Bates decides that there's a discussion in Bates about about a jury verdict, which is an act that may influence corporate decision or defend decisions by defendants versus the underlying elements of the common law claim and lore also talks about that, that the requirement here refers to the elements of the common law, the common law claim and the way this analysis proceeds as you see in Bates, as you see in in the Indian brand decision of your court is by way of comparison, we look at the federal standard and the applicable standard here is the misbranding standard, and we compare it to the state law standard and and mindful of the concept of equivalence and Bates we asked ourselves, are these your client use the product from 98 to 2017, the diagnosis was in 2006. What years was this label inappropriate and what was the exact duty under the Pennsylvania failure to war. Well, the, the, what did it have to say, well the Pennsylvania, the Pennsylvania, Pennsylvania law regarding a strict liability claim for failure to warn has been consistent for all for many, many years and, and for all of the period of time that would change the research, the, the opinions on life glyphosate changed over time so I think it does matter so if you could tell me what is your position as to the exact duty, and at what time, okay well let me separate two different things. One is the EPA is various statements regarding glyphosate whether it's in the form of some kind of scientific paper or otherwise and then and then separately at the, which is the top level of, of the first tell me the answer and then how those things work. Sure, no I understand, which, and, you know, in terms of the, in terms of the state law standard the state law standard is that a product is in a defective condition, this is, this is, these are the elements of the Pennsylvania claim for sure. The product is in a defective condition. When it lacks efficient warnings to notify the ultimate user of the dangerous inherent in the product. And that's, that's those, that's the requirement if we accept the proposition that the common law standard is, is, is a, is a requirement that then has to be compared to the applicable federal requirement. That is the standard that that the product lacks efficient, the product is effective under your analysis and of that equivalence. What would the. I'm just asking what did the label have to say, if this was, if this was misbranded what did the label have to say during what timeframes. So, let me just hear your theory of failure to work. So this, so the, the complaint that was filed in this case doesn't articulate a doesn't articulate a, a, a warning that would have complied with Pennsylvania law. And in terms of the preemption analysis I don't know that we have to know the answer to that question. The question is, is this Pennsylvania common law standard equivalent to and consistent with the federal misbranding standard and I would say the answer to that is, is that's true but in 2022 just by way of example of a label that might well be consistent with Pennsylvania law and I'm not a jury and I'm not the Supreme Court of Pennsylvania, but we know that currently the state of California has been has authorized the EPA has a different point of view, you should be mindful of these points of view and and be aware of your exposure to this toxic chemical right now, I don't, I don't know that that is the only formulation but that is a formulation, where, where there is an intention right like the more that we mind down the more they aren't equivalent, because I think your position is we've got a failure to warn under Pennsylvania law, because glyphosate causes cancer. And then the EPA has said we register it, and we're pretty sure that it doesn't cause cancer so if we keep going and we keep mining down, they are intention and, and they are not equivalent. If we go up to a broad broad broad level and say well what's what's what's the macro highest level requirement. Maybe there's equivalence there but we see in the MBA cases that they're looking device by device not macro level to do that. So shouldn't we look at that specific comparison between EPA saying we're fine we register it. And then your claims out of Pennsylvania law that say no this contrary to the EPA is carcinogenic, it's really hard at least there's a strain there to say that that's equivalent genuinely equivalent, we can't read genuinely out of at least precedent. Well, if we're going to if we're going to, if we're going to dig down below what I call the top level, where, where the, the requirement of state law is the fit is the common law claim and the requirement under FIFRA is the misbranding statute and I would say respectfully that those two standards are are very equivalent very consistent with one another. If you just look at what they say, but but okay just trips to your point if we're going to go below that and look at the registration. Then what we have to ask ourselves is what is registration right registration is the method by which the EPA permits a pesticide to be sold, but Congress, to the point of express preemption, what did Congress say Congress has defined registration in very narrow terms. Congress has said that, that, that registration is prima facie evidence that a pesticide complies with FIFRA Congress has said that isn't it, isn't it. It's a requirement though right and it is a requirement be talks of requirements. Well, it is a requirement that pesticides be registered. In order to be sold. That is a process is labeling isn't it, and labels are submitted, and when the EPA approves when the EPA registers a product, it registers a product, including, including the label, but the fact of registration. That's what that's what Monsanto was relying upon the relying upon the fact of registration, the fact of registration is under the statute itself, only an evidentiary presumption. That presumption is from 136 little a F2. Isn't that the top of your head. No. But isn't that a vestige of a time when products could be registered under protest meaning labels that did not meet EPA standards. So, is that just a way to preserve post 1964 suits for labels under protest labels registered under protests. Yes. So your honor I don't know the answer to that question I know that that is what Congress has said Congress has said that registration what congressional intent does it reflect that the original 1947 statute includes that basically the sentence after it allows for registration under protest. Doesn't that reflect a congressional intent to address registrations under protest that do not meet EPA labeling requirements. Well, that is that I'm you'll forgive me I'm at a disadvantage I'm not quite sure how to answer that question and I and I will acknowledge that congressional intent. There may there may be many congressional let me let me let me just give a little definition to this because this this prima facie evidence phrase that you're using. It comes after there's an opening clause it seems to have a few conditions in it when it says, as long as no cancellation proceedings are in effect. And so cancellation proceedings might be this remnant that we're talking about. And so I guess what I'm saying is, we can't just sit there and say there's no prime that it's never prima facie evidence we have to meet. At least what strikes me is a condition precedent. And then, this, I don't know that has any play with the 136 J unlawfulness finding and that unlawfulness standards, and so I don't know that this phrase can can say that I think if you register a product. Well, if you don't register a product then using it's going to be unlawful, and I don't know that this matters to that, does it. Well, if we're going to, if, if, if, on the basis of express preemption, we're going to hue to what Congress has said, then whatever the intent is Congress has said that registration has a limited has has has a limited import in the context of, of what is unlawful, right, like if you market a product without it being, you're in trouble, like, like, unlawful, which so we know at least that much. And maybe we can build out from that, then what it means. If you register. And I think what you're saying is not every time you register. Does that mean that you're in the clear, as far as is no liability, certainly not. But the problem again with this phrase this prima facie evidence is comply with the registration provisions of this sub chapter, and again we aren't saying, so it might say it's prima facie evidence visa be problems you might have with the federal government. But how is it prima facie evidence of problems you might have based on a state failure to Warren's. Well, that gets back to the question of equivalency. If, if, if the Pennsylvania standard if the pennant if the Pennsylvania strict liability claim for failure to Warren is is equivalent to consistent with the the misbranding the misbranding standard, then it is, then it is, is imaginable that that where a claim succeeds for failure to for strict liability failure to warrant and may also follow, or it may be imaginable that that the pesticide also is that the pesticide also is misbranded. I think the limited point that I want to make about registration is that is that while regal concededly has a has preemption language that is similar to what we have in FIFRA that FIFRA has different language in terms of the critical event of registration, and what FIFRA has said is that registration is only prima facie evidence that it is not a defense to a misbranding claim, and that informs. I think the kind of emphasis that can be given to the fact of registration itself as a basis for express preemption under the uniformity language of the of the preemption provision. There are other, of course, actions of the EPA, there's the there's the fact of registration, but the EPA has also issued various papers scientific papers and interim registration decisions concerning concerning glyphosate, and those actions of the EPA, I would say is that the, the appropriate level of abstraction or generality is at the top level is, is that what we've concluded in Indian brands, and are we bound by that here. Well that is what you concluded in Indian brands, actually you and if we were to find differently here would that be in contravention or is there any room in Indian brands for a more down in the weeds. Well, I think I think that I think that you could you could write an opinion that evaluates and rejects express preemption at every level that first of all at what I'm calling the top level, when we compare the strict liability standards to the setting but is the, does the fact that Congress endow the fact of registration with the power to preempt an underlying state law claim, I would say the answer to that is no given, given that what Congress said is that registration is an evidentiary burden, and, and the various things that that the EPA has done with with glyphosate that none of those amount to requirements or rules of law either. Those are statements and actions and regulatory agencies of course have their point of view and obviously the IR has a different point of view and there is a robust conversation that is unfolding with regard to technical glyphosate to say nothing of formulated roundup, which has different ingredients which which which make the, the actual product that you buy in a store, more toxic according to IR and more carcinogenic than the, than the active ingredient glyphosate alone, but those various EPA actions do not have the formality that could render them or equate them to a requirement to a rule of law, so as to trigger the preemption language and override the state law cause of action. I come back to the, the thought that I offered at the outset which is that different in this regard is an exercise in cooperative federalism. Congress has acted in a very limited way to override historic and traditional state sovereignty, to, to enact laws for the health and safety of citizens, but it's, but it's very limited and and limited to the concept of of requirements. Regal is a different case, and Regal is a different case for a couple of reasons. One, because when, as a practical matter when the FDA receives testing about medical devices, it's, it's getting testing, it's getting testing on the medical, it's getting, it's receiving information about those devices as tested on people, right, it is not unethical to test a pharmaceutical or a medical device on a person and the EPA, excuse me, the FDA is able to evaluate is able to evaluate all of that when assessing safety and efficacy and setting the level of a label, but bear in mind that pesticides are poisons, right glyphosate has only one thing that it does its only job is to kill things, and human beings therefore are guinea pigs. Right, these pesticides go out into the world, the EPA eventually has the ability to look at epidemiological studies, but never ex ante is able to look at testing on how these how these pesticides work on people. And so that that gives some context for why registration is such a limited idea and and illustrates why Regal as a practical matter to say nothing of a legal matter has a different texture and different considerations that render it and render it a comparator, but not, but not decisive on this question. Thank you, Mr. Becker. Thank you. And I'll leave for our brief. The other question which is the the issue preclusion question which you haven't asked about but you have that argument. Thank you. Thanks. You may proceed. Thank you, Your Honor. I could try to quickly respond to a number of points Judge Chung you asked about the Indian brand case and I really strongly disagree with Mr Becker's characterization of it. The court and Indian brands ultimately found that what you know the defendant was trying to base preemption on a background observation with you know the EPA document wasn't even talking about the pesticide issue and sort of made a straight comment, the court said we would be very hesitant to base preemption on that. I do not think anything in Indian brands endorses this incredibly high level of generality high level of abstraction test that the plaintiffs here are proposing. We talked a bit. Tell me a little bit more about how you make that distinction because it seems that the court starting point was in first assessing whether the failure, the Pennsylvania failure to warn standard, what imposed any different duties than the if we're, if we're saying that those are in fact equivalent. And then you have a very robust, as opposed to background. Take it from there. No, so I think it's I think it's a great point we're not saying that you would never do this comparison of the state had a wildly different tort standard that just at that abstract level is in addition to or different from that would be a reason that it's preempted. The point is, the analysis just doesn't stop there the court and Indian brands didn't stop there. It went on, then found there was kind of, there was nothing else in what the EPA had done because it was just the sort of straight background statement. Here we do have is your honor says the duty because we seem to say an Indian brand that the duty. We have to, we have to analyze whether the duties are parallel. And that the duties were parallel at that top level for your honor and that there is a duty to provide the safety warnings under fair for the EPA determines are required there is a statutory process by which EPA makes these decisions, it works the device specific requirements you just look at the general federal standard, and in this in the general state standard, then regal came after that and said when the EP when the FDA does do safety review, it imposes device specific requirements under the statute and EPA does the same here, you know plaintiffs have tried to distinguish regal but they don't actually have any difference that matters under the statute. The one thing that they raised really is the section 136 af to that has a lot of problems, some of which have already been discussed but if I could add one more. It's that, you know, let's take this text of that seriously registration is not a defense and then subject to the condition precedent the judge trips mentioned, you know, registration is only prima facie evidence of compliance. We're not saying that registration is more than that you can have a register product that could violate FIFRA because you don't give the warnings that EPA required, because EPA never considered an efficacy issue, you might fail in your adverse event reporting requirements, you know, all of those could be reasons that a duly registered pesticide violates FIFRA and every one of those applies under the medical device amendments and the regal framework as well, you could have an approved product where the FDA says you concealed evidence you didn't make adverse events reports. It's now misbranded so so approval registration, not a defense not conclusive evidence but when you have a claim here that is saying that that is saying that you have to give a that your opponent is of which is this prima facie evidence cannot be read to mean a requirement requirement is something bigger than prima facie evidence. And so I think everything you said checks out it makes sense to me. But does that get you far enough, because don't you need to say in addition to all of that this prima facie evidence can be read as a requirement under the uniformity clause so so could you just speak to why you think there's consequences I think those are good. That makes sense to me, it checks out from what I've read, but but why does that get you to the point of it being a requirement I mean the nice drug was kind of emphatic they said it defies logic to read it that way. And I want to know, I, you think it doesn't define logic, and I want to know why you think it doesn't. Your Honor I don't think it defies logic. I actually think when you read with the Ninth Circuit said closely there is no, I say this with all due respect, I think there's an error there when the Ninth Circuit jumps from registration is prima facie evidence and I think there's a line where the Ninth Circuit says, well, you know the label approval is only prima facie evidence that is not what the statutory text says we are not saying that the mere fact of registration is conclusive evidence of anything. It is part of a statutory framework, the statute requires you to get EPA approval before selling a pesticide it requires EPA to determine what health and safety warnings are required, it requires you not to add health and safety warnings. This was raised by Judge to Garris before I did want to just give a regulatory site which is 40 CFR section 156 point 70 sub paragraph C, which says you cannot add safety and hazard warnings without EPA approval. So there's a lot of requirements here so our point is not registration, just registration is something more than prima facie evidence of compliance. Our point is that Congress created a statutory framework, under which when EPA does this, and just like in regal when EPA does a safety review does a label approval discharges its responsibility to decide what warnings required in order to protect health and safety that gives rise to requirements that are specific to the pesticide, just like in regal just like the 10th Circuit said in Thornton with respect to decisions by the Department of Agriculture about label approvals giving rise to requirements. I know my time is up, I did have a quick factual answer to one of Judge Chung's questions but I'm happy to stop here. Just on the question about you asked a question that I think relates to impossibility preemption, about what is the specific. What is the specific obligation that plaintiffs think that there was to warn here and I didn't hear a clear answer from my friend. I think the answer is that page 74 of the Joint Appendix and their complaint where they say the problem here is there was a failure to warn of the dangerous characteristics of glyphosate. And, you know, this is more I think goes to impossibility preemption than just express preemption, EPA has been seized of this for decades, it has continuously concluded, to this day, it does not think that this product causes cancer so so we know, EPA would not and could not approve a warning, you know, perhaps it could improve, you approve some sort of informational language, as your honor suggested the timing doesn't even work for the informational language that the shoppers are a question, but the more fundamental point is, he is saying, I was injured because you did not tell me this product causes cancer, EPA would not approve that, and it is impossible to comply with the state law requirement that is being alleged here without violating federal law. Thank you. Thank you. We'll take this case under advisement. We want to thank counsel for their excellent briefing and oral argument today.